## Case No. 9,602.

### MILLIGAN v. The B. F. BRUCE.

[Newb. 539.] [1]

District Court, D. Michigan. Jan., 1857.

SEAMEN—WAGES—AGREEMENT NOT IN WRITING—STATUTORY PROVISION—TUG BOATS—PREVIOUS WAGES—EVIDENCE—BOOK OF PAYMENTS.

1. The act of July 20, 1790 [1 Stat. 131], for the government and regulation of seamen in the merchant service, providing that if an agreement in writing be not made, &c., with seamen, they shall be entitled to the highest rate of wages that shall have been paid for a similar voyage within three months preceding the shipping, does not apply to seamen upon tug boats.

[Cited in Worth v. Steamboat Lioness No. 2, 3 Fed. 925.]

2. Where a seaman was proved to have served the year previous for a particular rate of wages, and shipped with no agreed rate; *Held*, that in the absence of contrary proof, the last year's wages would be presumed right, and taken as the measure of wages for the present.

3. A book of original entries, kept by the captain of the propeller, who was also part owner, is inadmissible to prove cash payments, there being no other proof of these payments.

[This was a proceeding in admiralty by Thomas Milligan against the propeller B. F. Bruce for wages due the plaintiff for services rendered.]

---

[1] [Originally published from the MSS. of Hon. Bushrod Washington, Associate Justice of the Supreme Court of the United States, under the supervision of Richard Peters, Jr., Esq.]

[1] [Reported by John S. Newberry, Esq.]

Jerome & Swift, for libelant.

Towle, Hunt & Newberry, for respondents.

WILKINS, District Judge. Libel for mariner's wages as engineer of the propeller, employed as a tug boat from the mouth of the river Detroit to Port Huron. The libelant claims at the rate of $70 per month, the highest rate of wages given to engineers. The answer does not deny that he was employed as engineer, but alleges his incompetency to act in that capacity, and that, in consequence of his incapacity and ignorance the propeller suffered great damage, which, as a pecuniary loss, covers more than the wages to which he would be entitled. The libelant alleges that he was employed as engineer, at no particular rate of wages, and that, as no agreement was made in writing, he is entitled, by the act of 1790, to the highest wages paid for such services. The law cited does not apply to this case, the propeller not being engaged in foreign commerce. The libelant has attached to his bill an account stated, claiming $70 per month, for six months and twenty-eight days, and giving credit for sundry payments, amounting, in all, to $68, specifically enumerated, item by item. The answer responds that the claimant is ignorant of the actual time the said libelant worked, and leaves him to the proof of the same. The proofs are, that the libelant went on board of the propeller on the 10th of February last, and left on the 28th of August; and that the vessel commenced running on the 1st of May: that he was engaged about forty-seven days in February and March in fitting up the engine and preparing it for use in the approaching season: that he had served the previous season as engineer, and was continued in that capacity, and that he had got the last year the sum of $45 per month. The court will allow now no more than that sum, and will allow him at that rate from the 10th of February, the period fixed by the witness Donevan as the time when he commenced his labor as engineer. He was acting in that relation when he was thus employed, and in the absence of satisfactory proof to the contrary, or that he was working by the day, the court must allow the usual wages per month, which he received the seasons previous. A book has been introduced in evidence, as a book of original entries, kept by the captain, showing that the libelant commenced "fitting out" on the 7th of February, and that the boat commenced running on the 1st of May. This book exhibits certain cash payments made by the captain, who is part owner of the vessel, which are not admitted by the libelant. These charges are inadmissible, there being no other proof of these payments. To admit such evidence as conclusive against the mariner would subject seamen to great injustice. There is no necessity existing why the old rule should be modified in this respect. Cash payments should be accompanied by corresponding receipts; and where a seaman cannot write, his mark should be taken in the presence of the witness. To adjudge otherwise, would make the party interested competent proof of payment. Moreover, in this case the entries are not of such a character as to entitle them to implicit credit. The libel specifically set forth the payments made, and the answer should as specifically have denied the exhibit, and directed attention to the other payments if they actually existed. Otherwise, we are called upon to reject the positive oath of the libelant, and admit the statement of the respondent without oath.

The court, therefore, decree that the libelant shall be paid for six months and twenty-eight days, at the rate of $45 per month, amounting to $308.48, deducting therefrom the payments which he has admitted in his libel, of $68, with the $16 admitted on trial to Mr. Towle, making in all a credit of $84, and adjudicating the balance at $222.48. The cash paid by Mr. Carey was neither proved nor admitted.

As to the tender alleged, the court is of opinion that no legal tender was proved; $45 per month was offered to the proctor, but leaving the time still a subject of controversy. A positive sum, covering the whole controversy, should have been offered.

Decree for $222.48, with costs.